## Grigsby and Oldham vs Daniel.                    CASE.

ERROR TO THE GARRARD CIRCUIT.                    Case 98.

*Witness. Depositions. Evidence.*

JUDGE MARSHALL delivered the opinion of the Court.

<span style="float:right">June 12.<br>The case stated.</span>

In January, 1831, at the city of New Orleans, Thomas
Blackwell and A. G. Daniel, joint owners, sold and trans-
ferred to the plaintiffs, nine slaves, warranting them
"sound in body and mind, except Jerry, who is indispos-
ed with the dysentary, and Garland, whose knee is a lit-
tle swelled." In 1836, the plaintiffs commenced this ac-
tion on the case against Daniel and Blackwell, averring
fraudulent msirepresentations, and concealment as to the
soundness of Jerry. This action was abated as to Black-
well, by the Sheriff's return of "no inhabitant," on the
capias. And on the trial of the cause, in 1844, Black-
well being released by Daniel from all liability to him,
was offered and admitted as a competent witness on the
part of the defendant, and the plaintiffs having opposed
and excepted to his admission, its propriety is the first
question which we shall consider.

By the abatement as to him, Blackwell was complete-
ly disengaged from the suit, and cannot be embraced in
the rule which excludes parties from being witnesses;
nor do we perceive the applicability to this case, of any
principle which can exclude him because being named as
a defendant, he was not then an inhabitant of the
county in which the suit was brought, and in which he had
resided for four years after the alledged grievance. The
release of Daniel removed all objection on account of
any liability, real or supposed to him, which is a suffi-
cient answer to the case of *Pendleton* vs *Speed*, (2 J. J.
*Marshall*, 502.) And if it be conceded, that from the
nature of the alledged tort, and the relation between these
parties, a judgment against Daniel on his plea of not guil-

<span style="float:right">One who is sued<br>jointly with an-<br>other for an al-<br>ledged fraud,<br>who was not a<br>citizen of the<br>county, and as to<br>whom the suit<br>had been abated,<br>on being released<br>from all liability<br>by the defendant,<br>and any action a-<br>gainst him bared<br>by limitation,<br>was a competent<br>witness.</span>

GRIGSBY, &c.
vs
DANIEL.

ty, would be a bar to any subsequent action against Black-well for the same tort; still, as Blackwell appears to have been protected and discharged from any such liability, by lapse of time and the statute of limitations, which precluded the maintainance of any suit against him for the original cause of action, we are of opinion that he had no interest either in the event of the suit or in the record, which could render him incompetent. There seems to be no reason for saying that a liability from which the statute discharges the witness, constitutes a subsisting disqualifying interest. It certainly should not be assumed as a ground for rejecting the witness as being interested, that he would not if sued, plead the statute, which by discharging him from liability, removes his interest. And as it is incumbent on the objecting party to make out the alledged incompetency, it devolves upon him, after a *prima facie* case for the application of the statute is shown, to show on his side, that it is not applicable, that it could not be pleaded, and that it therefore furnishes no discharge. There is nothing appearing in this record, which could repel the effect of the statute as a bar to any suit which, when this case was tried, might have been brought against Blackwell for the same tort. And if matter of that sort might possibly exist, it is not to be supplied by conjecture, for the purpose of excluding the witness. If therefore, it were admitted that the pendency and dismissal of the suit in Chancery, hereafter to be noticed, might have entitled the plaintiffs, under the sixth section of the act of limitations, (*Statute Laws*, 1137,) to commence their action at law within one year after such dismissal, and that the privilege would have been prolonged, until process could be served in such action, points which we do not decide, still the return of "no inhabitant," by the Sheriff of the county in which the party once resided, would not show a sufficient cause for eight years delay. The rule as to the operation of time, and the statute of limitations, in removing the interest arising from liability to suit, is laid down by Greenleaf, in his treaties on evidence, (page 477, sec. 430,) upon the authority of adjudged cases referred to. And as under this rule, the liability of Blackwell

was already barred by the statute when he was offered as a witness, the fact that it would if then subsisting, have been barred by a judgment in favor of the party for whom he was to depose, did not render him incompetent. Without, therefore deciding, which we we need not do in the present aspect of the case, whether such a judgment would have that effect, we are of opinion that there was no error in admitting the witness to depose.

The only remaining question presented by the record, grows out of the rejection of two depositions offered by the plaintiffs. It was admitted that these depositions had been taken and read as evidence in a suit in chancery, brought in 1831, by the present plaintiffs against Blackwell and Daniel, "concerning the same subject matter that this action is for," in which suit the process was duly served, and on hearing at the September term, 1836, the bill was dismissed without prejudice; and the depositions were objected to and rejected on the trial of the present case, on the sole ground that they had been taken without giving to Daniel any notice of the time and place, &c. It appears that at the taking of the first of these depositions, Blackwell attended and cross examined the witness, and that a notice of the time and place of taking the other had also been served on him alone, but there was no cross examination.

It may be assumed that Blackwell and Daniel were partners in the ownership and sale of the slaves and in the proceeds, jointly interested in that transaction and in any liability growing out of it by reason of the fraud of either in negotiating the sale, and that they were jointly interested in the matter involved in the suit in chancery. The case as now presented, furnishes no ground for discriminating between them in regard to their interest and position in that suit. The presumption, of course is, that these depositions having been read in that suit without objection by either, were admitted by both and each, to be proper evidence against them in that case; and it is contended that on this ground alone, they should have been admitted in this case. In support of this position, reference is made to the case of *Kercheval* vs *Ambler*, (4 *Dana*, 168,) where the Court obviously considers it as

*Margin notes:*

GRIGSBY, &C.
*vs.*
DANIEL.

Depositions *read* in a chancery suit, may be read in a subsequent suit at law between the same parties, or some of them, where the same subject matter is involved, and their interest the same, and the witness cannot be had, notice of their taking is not indispensible if the depositions were read on the first trial.

GRIGSBY, &c.
vs
DANIEL.

a matter of course, that depositions taken and read in an action of ejectment between the same parties, were afterwards admissible between them as secondary evidence on the trial of a writ of forcible entry brought for the possession of the same land. The case of *Kelly's executors* vs *Connell's administrator*, (3 *Dana*, 532–3,) seems also to sanction the position that the statement of a witness in a judicial proceeding, which was evidence between the parties, may on that ground, be subsequently proved as evidence between the same parties and upon the same issue, when other circumstances concur to make secondary evidence admissible.

The essential condition involved in this proposition, is that the first statement shall have been once legally admissible and used as evidence, which implies that it was made in a judicial proceeding, with the opportunity of cross examination. When the statement is made orally, in a regular trial between parties in a Court of Law, the proof of this fact necessarily proves that each party to the trial had the opportunity of cross examination; and nothing is necessary in order to its subsequent admissibility, but to show that the witness himself is unattainable. But testimony taken by deposition and not being delivered by the witness on the trial before the judge, is not admissible even in the first instance, without proof, or what is equivalent to proof, that the party against whom it is offered, had the requisite opportunity of cross examination. Without this it is not evidence between the parties in the first instance, on any trial either at law or in equity. Whence it seems to follow, that as a deposition could not be evidence in the case in which it was taken, except upon some special terms or upon proof or admission that the requisite opportunity of cross examination had been furnished by notice, so the fact that it was read as evidence in the original case, implies the existence of some of these grounds for its admissibility in the first instance; and as the general statement that it was read as evidence on the trial, excludes the presumption of its having been read under any special agreement limiting its effect or admissibility as evidence, so such general statement authorizes the inference and is sufficient to establish

*prima facie* at least, the fact that there had been proof or admission of notice, or that it had been dispensed with, not for any special or limited purpose, but with the effect of admitting the deposition as general evidence, to stand on the same footing with the other evidence in the case.

These observations are made with reference particularly to that which is admitted to be evidence upon the final trial, when the record is made up, and the parties ought to know what it proves. They are intended to apply to the fact of notice, considered as an essential requisite to the admissibility of a deposition in the first instance; and they lead us to the conclusion that as these depositions appear to have been read on the trial of the chancery suit against Daniel as well as against Blackwell, with equal effect against both, without objection by either and without any special limitation upon their effect, the presumption is, that they were then properly admissible against both; and it is too late now, when they are offered in evidence in another case, to object that they were taken without notice to Daniel. Does this in truth, mean any thing else than that no notice is now found among the papers? And is a party to lose the benefit of depositions read on the trial without objection, unless when he finds it necessary to use them in a subsequent case, ten, or twenty, or fifty years afterwards, and when they cannot be again taken, he either produces the notice with return of service, which is never recorded, or finds witnesses to prove the fact of notice, which no one would be likely to remember? Good faith requires that a party shall not be permitted to admit a deposition without objection or limitation, and at the same time reserve the right of objecting afterwards, when the evidence cannot be supplied, on the ground now taken. A regard for the safety of parties and for the weight and character of judicial proceedings, forbids the allowance of such an objection. If Daniel had been the sole defendant in the chancery suit, it would have been obvious that he could not, after admitting these depositions as evidence against him, on the trial of that suit, have objected to them when offered in this case, on the ground of want of notice; and upon the assumptions which we have made with regard to his

interest in that suit, we think it scarcely less manifest that they have not lost their character as evidence against him, because no notice to him of the time and place of taking them is now produced.

Nor do we deem it material whether actual notice was ever given to Daniel or not. Blackwell, so far as appears, was the active agent in managing the defence. Daniel confiding in the identity of his interest, may have trusted to his agency, and being satisfied with notice to him, may on this ground, have waived the want of notice to himself. But suppose he had not waived it, is it clear that notice to his partner and co-defendant, whose interest in the suit was identical with his, might not have been deemed sufficient to authorize the reading of the deposition against both, even if the objection had been made in the chancery suit? In the case of *Gilly, &c.* vs *Singleton,* (3 *Litt.* 250,) this Court decided that notice for taking depositions served upon one of two partners, co-defendants, even after dissolution, but in a suit respecting the partnership business, was sufficient to authorize the reading of the deposition against both. It has also been decided that the answer of one partner is admissible against another; and the sufficiency of notice of protest to one partner, seems to be well established; (3 *Litt.* 251;) (2 *Howard,* 483.)

It is not necessary to decide the general question whether notice to one partner is sufficient to authorize the reading of depositions against both; and we have referred to the doctrines which have been applied to that and other kindred questions, rather in confirmation of the conclusion that this objection comes too late in the present case, than as presenting a distinct ground for its adoption. The question of the admissibility of the depositions being limited to the effect of the fact that no notice to Daniel appears, or is directly proved, we have looked to no other objection, and our view of the subject requires no discrimination between the two.

It is only necessary to add that the two depositions seem to have a material bearing on the case, and that being, as now appears, admissible in evidence, it belongs to a jury to determine their weight.

Wherefore, the judgment is reversed and the cause re- manded for a new trial, on principles consistent with this opinion.

*Turner* for plaintiffs; *Caperton* for defendants.

